IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

Jonetta L. Grieme

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-against-**

LifeLine Foods
HR Adrea

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for Employment Discrimination**

Case No. 5:26-CV-06223
*(to be filled in by the Clerk's Office)*

**REQUEST FOR TRIAL BY JURY**

Plaintiff requests trial by jury. ☒ Yes ☐ No

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: Jonetta L. Grieme
Street Address: 208 State Rt. K Hwy.
City and County: Amazonia, MO
State and Zip Code: 64421
Telephone Number: 816 447-0661
E-mail Address: jonettagrieme26@gmail.com

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

Name: LifeLine Foods
Job or Title (if known): HR Adrea Sobetski
Street Address: 2811 S. 11th street
City and County: St. Joseph, MO
State and Zip Code: ~~64421~~ 64503
Telephone Number: 
E-mail Address (if known): 

Defendant No. 2

Name: 
Job or Title (if known): 
Street Address: 
City and County: 

State and Zip Code ______________________

Telephone Number ______________________

E-mail Address (if known) ______________________

C. **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

Name Life Line Foods

Street Address 2811 S. 11th Street

City and County St. Joseph Buchanan County

State and Zip Code Missouri 64503

Telephone Number 816 279-1651

## II. Cause of Action

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒ Other federal law *(specify the federal law)*:
42 USC § 12101 et seq.

☒ Missouri Human Rights Act, Missouri Revised Statute § 213.055

☒ Other state law *(specify, if known)*:
RSMo 213.055, 213.070, 213.010(4), 287.780, 213.055 1(1)(a)

☐ Relevant city or county law *(specify, if known)*:
________________________________

## III. Administrative Procedures

A. Did you file a charge of discrimination against Defendant(s) with the Equal Employment Opportunity Commission or other federal agency?

☒ Yes Date filed: ____________________
☐ No

***Attach copy of the charge to this Complaint***

B. Have you received a Notice of Right-to-Sue Letter from the Equal Employment Opportunity Commission?

☒ Yes ☐ No

***If yes, please attach a copy of the letter to this Complaint.***

C. Did you file a charge of discrimination against Defendant(s) with the Missouri Commission on Human Rights?

☒ Yes Date filed: ____________________
☐ No

***Attach copy of the charge to this Complaint***

D. Have you received a Notice of Right-to-Sue Letter from the Missouri Human Rights Commission?

☒ Yes ☐ No

***If yes, please attach a copy of the letter to this Complaint.***

E. If you are claiming ***age discrimination***, check one of the following:

☐ 60 days or more have passed since I filed my charge of age discrimination with the Equal Employment Opportunity Commission.

☐ fewer than 60 days have passed since I filed my charge of age discrimination with the Equal Employment Opportunity Commission

## IV. Statement of Claim

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☒ Termination of my employment.
- ☐ Failure to promote me.
- ☒ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☒ Retaliation.
- ☒ Harassment/Hostile Work Environment
- ☐ Other acts *(specify)*: ______________________

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on the following date(s):

Between December 2025 and May 2026

C. I believe that defendant(s) *(check one)*:

- ☐ is/are still committing these acts against me.
- ☒ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [ ] race ______________________________
- [ ] color ______________________________
- [ ] gender/sex ________________________
- [ ] religion ___________________________
- [ ] national origin _____________________
- [ ] age. My year of birth is ____________. *(Give your year of birth only if you are asserting a claim of age discrimination.)*
- [x] disability or perceived disability *(specify disability)*

PTSD

E. Write a short and plain statement of FACTS that support your claim. Do not make legal arguments. You must include the following information:

- What happened to you?
- What injuries did you suffer?
- Who was involved in what happened to you?
- How were the defendants involved in what happened to you?
- Where did the events you have described take place?
- When did the events you have described take place?

If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Please See: Complaint attached Containing 15 pages

## V. Relief

As relief from the allegations of discrimination as stated above, Plaintiff prays that the court grant the following relief to Plaintiff: (check any and all that apply)

☐ Defendant be directed to employ Plaintiff

☐ Defendant be directed to re-employ Plaintiff

☐ Defendant be directed to promote Plaintiff

☐ Defendant be directed to ____________________

☐ Monetary damages (please explain): ____________________

☐ As additional relief to make Plaintiff whole, Plaintiff seeks (please specify and explain):

Economic-102,400, Reimbursement 17,000, Non Economic 300,000, Punitive 500,000 Reputational and Tortious Interference 100,000

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: Oct. 15, 2026

Signature of Plaintiff Jonetta Grieme

Printed Name of Plaintiff Jonetta Grieme

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI

**JONETTA L. GRIEME,**
Plaintiff,

V.                                                                 **Case No.: ____________**

**LIFELINE FOODS, LLC,**
Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, **Jonetta L. Grieme**, Pro Se to file this discrimination Complaint under RSMo § 213.055 (Unlawful Employment Practices), RSMo § 213.070, RSMo § 213.010(4) & RSMo § 213.055.1(1)(a) (Failure to Accommodate) (Retaliation / Hostile Work Environment), RSMo § 287.780, and the **Americans with Disabilities Act Amendments Act (ADAAA / ADA)** (42 U.S.C. § 12101 et seq.) against LifeLine Foods, LLC, respectfully states to this Honorable Court as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's federal statutory claims pursuant to 28 U.S.C. § 1331, as this action arises under the **Americans with Disabilities Act Amendments Act (ADAAA)**, 42 U.S.C. § 12101 et seq**.**
2. This Court exercises supplemental jurisdiction over Plaintiff's state and federal law claims brought pursuant to the **Missouri Human Rights Act (MHRA)**, RSMo § 213.010 et seq., and the Missouri Workers' Compensation Retaliation statute, RSMo § 287.780, pursuant to 28 U.S.C. § 1367, because the state claims are so related to the federal claims that they form part of the same case or controversy.

3. Venue is proper in the United States District Court for the Western District of Missouri, St. Joseph Division, pursuant to **28 U.S.C. § 1391(a)(b)(1) and (b)(2)**, because Defendant facility operates within this judicial district, and the events, omissions, and unlawful employment practices occurred with-in Buchanan County, Missouri.

## PARTIES

1. Plaintiff **Jonetta L. Grieme** is a resident of the State of Missouri, and was an employee in Buchanan County, MO with a qualified well documented disability with rights that should be protected by the ADAAA and the **MHRA**.
2. Defendant **LifeLine Foods, LLC** is a domestic limited liability company organized under the laws of the State of Missouri, maintaining its principal place of business and operations is at 2811 s. 11th street St Joseph, MO 64503. Defendant is an employer engaged in an industry affecting commerce and employs 200 or more employees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Plaintiff has fully satisfied all administrative prerequisites to filing this action. Plaintiff timely filed a Charge of Discrimination with the federal **Equal Employment Opportunity Commission (EEOC)** and cross-filed the complaint with the **Missouri Commission on Human Rights (MCHR)** under the agencies' active work-sharing agreement.
2. Plaintiff received an official **Notice of Right to Sue** on August 23, 2026 from the **EEOC** and **MCHR**, and this Complaint has been initiated within 90 days of the receipt of said notices.
6. The employer terminated Plaintiff Jonetta Grieme's employment and told her that they were no-longer going to accommodate her and terminated her employment.

## PART I: FACTUAL ALLEGATIONS

### A. Plaintiff's Employment Background and Disability Status

1. Plaintiff Jonetta L. Grieme was hired by Defendant LifeLine Foods, LLC in March of 2023 within the packaging department and was given an accommodated position putting labels on product, pulling the freight from the line and placing it in the warehouse for shipping a job assignment that never changed making it the perfect position for her disability because the plaintiff's disability makes it hard for her to absorb new information causing new task to take a little longer to learn and memorize.

2. Plaintiff is a **qualified individual with a disability** as defined under the **ADAAA**, **42 U.S.C. § 12111(8)**, and the MHRA, **RSMo § 213.010 et seq.**

3. Plaintiff was diagnosed in **1998** with **Post-Traumatic Stress Disorder (PTSD)**, clinical anxiety, and major depression. Following an extensive neurological evaluation in **2016**, her medical diagnosis was updated to **Chronic PTSD**. Prior to her hire by Defendant, Plaintiff's severe conditions had resulted in her receiving official Social Security Disability benefits for approximately 8 to 9 years before trying to re-enter the workforce.

3. At the time of her hire in March 2023, the defendant Lifeline was made explicitly aware that Plaintiff was disabled. Plaintiff provided comprehensive supporting medical documentation, including a letter from **Social Security Disability,** letter from her **psychiatrist** and supporting **neurologist records**.

4. Upon successfully re-entering the workforce, Plaintiff prioritized her vocational stability by working closely under the direct care of her treating psychiatrist and a licensed psychiatric social worker/case manager. Plaintiff's caseworker conducted mandatory weekly home visits to monitor her transition, systematically identifying environmental triggers for panic attacks and establishing physical coping mechanisms so Plaintiff could remain highly productive.

## B. History of Successful Reasonable Accommodations

1. Prior to her physical work injury, Defendant successfully accommodated Plaintiff's Chronic PTSD by assigning her to a structured, calm, and predictable position within the packaging department located at the **end of the bagline**.

2. The essential functions of this position included: Placing the product labels on the freight, operating a forklift to place the product in the warehouse for shipping and receiving and entering daily inventory into the system. Her position was located at the end of the bagline to receive completed product pallets.

3. Because this position allowed Plaintiff to work independently and removed her from high traffic areas and unpredictable people and situations, it served as an incredibly effective, mutually agreed-upon accommodation.

4. Plaintiff discussed with her Team Lead how much better her anxiety was in this specific role. For over a year and a half prior to her injury, Plaintiff successfully maintained her medical accommodations and performed all core functions of her employment.

## C. The Work-Related Injury and New Physical Limitations

1. In **June of 2024**, Plaintiff sustained a severe injury to her hip during the performance of her job duties. This injury necessitated major corrective surgical intervention, specifically a labrum repair surgery.

2. As a direct clinical complication of the workplace hip injury and subsequent surgical trauma, Plaintiff suffered extensive **nerve damage** resulting in a secondary diagnosis of **Neurogenic Bladder** with severe urinary incontinence and uncontrollable physical urges.

3. Following Plaintiff's hip surgery and the resulting neurogenic bladder diagnosis, Plaintiff's treating urologist issued a formal medical directive to Defendant explicitly stating that Plaintiff required more frequent, unrestricted restroom breaks as a necessary physical accommodation.

4. Defendant's management repeatedly rejected the medical connection between Plaintiff's hip surgery and her neurogenic bladder, using this skepticism as an excuse to treat Plaintiff with hostility, skepticism, and severe disparate treatment.

**D. Post-Injury Breach of Accommodation and Disparate Treatment**

1. Upon Plaintiff's return to work, Defendant **failed and refused to restore** Plaintiff to her established, accommodated position at the end of the bagline.

2. Instead, Defendant placed a newly hired worker, who only possessed three months of employment directly into Plaintiff's accommodated position pulling freight from the bagline and placed Jonetta back doing entry level work and the less desirable jobs as well as making her work beside a hostile employee.

3. Defendant immediately subjected Plaintiff to severe **disparate treatment** by repeatedly forcing Plaintiff to go home early during scheduled 12-hour shifts due to an alleged "lack of available work," while systematically allowing the non-disabled new hire to remain on-site and receive full working hours.

4. Defendant further isolated Plaintiff during full 12-hour shifts by forcing her to sit entirely idle in a small, confined operational perimeter to "assist" the new worker in what was explicitly designed and structured as a one-person operational task.

5. This structural isolation was intentionally orchestrated by Plaintiff's supervisor, **Zach,** to inflict severe professional boredom, isolation, and psychological distress, with the

explicit, targeted objective of forcing Plaintiff to constructively resign ("**Target-to-Quit Scheme**").

**E. Exploitation, Accommodation Requests, and Training Retaliation**

1. Defendant simultaneously exploited her specialized operational skills. Because the new hire was completely unqualified and uncertified to operate a forklift inside the tall storage racks, Plaintiff executed the tasks of retrieving supplies from the high racks for the new hire every single morning.

2.Defendant and HR lady named Adrea tried to convence Plaintiff that her accommodated position was not a position at lifeline, a position Plaintiff worked for over a year and a half.

3. Plaintiff submitted two separate, formal written requests to management requesting the restoration of her accommodated bagline position because the employee they placed her with screamed at her. In the second formal request, Plaintiff explicitly noted she needed the accommodation for her PTSD, and documented that the replacement worker was entirely unqualified and uncertified to handle high-rack forklift operations.

4. In direct retaliation to Plaintiff's second formal request, Defendant initiated immediate, emergency training to certify the new-hire replacement worker inside the storage racks.

5. **In the preceding three months of Plaintiff's return, Defendant had taken zero actions to train the new hire in racks until Jonetta mentioned the new-hire was not certified; consequently, the immediate emergency training day establishes that Defendant used Plaintiff's confidential, protected medical accommodation requests as an operational blueprint to permanently replace her and strip away her long-standing disability accommodation. Plaintiff preserved explicit photographic evidence of this sudden training.** Please SEE Evidence in support of my complaint.

**F. Severe Hostile Work Environment and Discriminatory Harassment**

1. Defendant intentionally subjected Plaintiff to a hostile, unsafe, and highly unpredictable work environment by forcing her to work directly alongside a co-worker, **Darrin Robinson** who screamed at her and threw things out of anger around her.

2. Mr. Robinson engaged in a continuous pattern of severe physical and verbal intimidation against Plaintiff, which included screaming, throwing objects in her immediate vicinity, and violently yanking operational materials directly from her hands, elevating Plaintiff's clinically documented anxiety..

3. Concurrently, Plaintiff's Team Lead targeted Plaintiff with explicit, discriminatory harassment regarding her disabilities. The Team Lead publicly defamed Plaintiff's character in front of numerous workplace peers by explicitly screaming and labeling her an "addict" because of her legally prescribed medical marijuana, which she uses off-duty to manage her Chronic PTSD. Plaintiff asked for the preservation of the surveillance of the incident and HR said their cameras don't record audio, hmm.

4. Defendant's Human Resources department completely disregarded these medical conditions of urinary incontinence from the "neurogenic bladder" and PTSD and behavioral reports, forcing Plaintiff to perform intensive labor under conditions of severe physical hardship, moisture from the neurogenic bladder, and medical distress.

**G. Pretextual HR Investigation, Security Lock-Out, and Coerced Eviction**

1. Following the sudden training event, Plaintiff took a permitted partial day of leave. While in the locker room, Defendant's Human Resources Generalist, **Andra**, approached Plaintiff and scheduled a mandatory meeting for the following morning "to discuss Plaintiff's concerns" .

2. HR formally directed Plaintiff via email to bypass her normal 7:00 AM clock-in time and report directly to the front administrative offices at 9:30 AM.

3. Plaintiff arrived at the facility early at 9:00 AM to place her personal property in her locker and access the employee cafeteria. Upon entering the building, Plaintiff was immediately intercepted by corporate security guards.

4. The security guard explicitly prohibited Plaintiff from moving freely within the facility, declaring: *"Jonetta, you are supposed to go to the front office."* Despite Plaintiff explaining that the meeting was not scheduled for another 30 minutes, the guard forced her to halt, placed a restrictive phone call to HR, and detained Plaintiff at the entrance until the HR Generalist arrived to personally tell her not to put her stuff in her locker and to go to the front office. Specifically told the Plaintiff "no" that I couldn't enter the building to place my stuff in my locker before the meeting..

5. Although Plaintiff entered the front office with the reasonable expectation of addressing her prior protected reports—specifically her Team Lead's public defamation labeling her an "addict" and the physical intimidation by co-worker Darrin Robinson —Defendant's HR Generalist completely inverted the meeting.

6. The HR Generalist immediately launched into a hostile, aggressive interrogation, fabricating claims that Plaintiff was actively "targeting" her co-workers and falsely accusing Plaintiff of creating a hostile work environment. These fabricated corporate claims mirrored the exact phrases and statutory concepts Plaintiff had legally reported regarding her supervisor Zach and co-worker Darrin Robinson.

7. Following a hostile initial interrogation, Defendant forced Plaintiff to remain isolated in the company breakroom for two consecutive hours before recalling her to issue an official disciplinary letter then sent her home and Plaintiff has never been wrote up in the 3 yrs she worked for LifeLine.

8. Plaintiff was subsequently ordered off the premises by the companies security guard and instructed that she would not be permitted to return to work unless she authored a personalized "written contract" explicitly pledging total obedience to the directives of corporate management. Plaintiff preserved verbatim audio records.

### H. Pretextual Suspension & Discriminatory Termination

1. Despite a spotless three-year employment history with zero prior disciplinary write-ups, Plaintiff was immediately sent home on a pretextual "disciplinary action."

2. While isolated at home waiting for her physician to compile redundant **ADA** accommodation paperwork demanded by HR, the company forced Plaintiff to exhaust her accrued Paid Time Off (PTO). and would not let her go back to work until she had her doctor fill out paperwork despite all the medical documentation and letter from physician at time of hire.

3. Defendant subsequently claimed that Plaintiff's long-standing bagline position "no longer existed, and stated they were no longer going to accommodate me for my disability" permanently revoked all medical accommodations, and terminated her employment.

## PART II: APPLICABLE JURISDICTIONAL AND STATUTORY AUTHORITIES

Plaintiff invokes and satisfies the following statutory, regulatory, and procedural authorities to sustain this civil action in the United States District Court for the Western District of Missouri:

1. **The Americans with Disabilities Act Amendments Act (ADAAA),** 42 U.S.C. § 12101 et seq.**:** Governing federal claims for disability-based discrimination, deliberate failure to accommodate, hostile work environment, and intentional retaliation. 42 USC sec. 12112

2. **The Missouri Human Rights Act (MHRA)**, RSMo § 213.010 et seq.**:** Providing independent, expansive state-law protections and remedies against employer discrimination and workplace harassment. RSMo 213.055
3. **Missouri Workers' Compensation Statutory Retaliation Mandate,** RSMo § 287.780: Granting a strict civil cause of action for actual and punitive damages against any corporate employer that discharges, discriminates against, or targets an employee for exercising rights under the Workers' Compensation Act.
4. **Federal Rules of Civil Procedure 8(a) and 10:** Satisfying all standard notice-pleading rules, paragraph numbering, jurisdictional declarations, and structural forms required within the Western District of Missouri.

## PART III: CAUSES OF ACTION

### COUNT I: BREACH OF WRITTEN CORPORATE POLICY / CONTRACTUAL MANDATE

**(Derived from LifeLine Foods Employee Handbook, Page 7)**

Plaintiff brings forward and incorporates all preceding paragraphs:

At all times relevant, Defendant governed its workplace decisions via an official Employee Handbook. **Page 7** of this handbook establishes an express, binding mandate regarding employee treatment and non-discrimination.

**Page 7** explicitly binds Defendant to an Anti-Discrimination Corporate Mandate, ensuring that anti-discrimination protections apply strictly to all facets of employment, including: hiring, job assignments, training, development, compensation, transfers, promotions, demotions, performance appraisals, corrective actions, and terminations.

**Page 7** explicitly bars Defendant's management from limiting, segregating, or classifying employees in any manner that deprives them of employment

opportunities or adversely affects their employment status due to a protected characteristic or medical disability. (In appellant's case her disability is Chronic PTSD, anxiety and neurogenic bladder, after the company accommodated her for 3 yrs, they decided they were no-longer were going to accommodate her and they gave her job to a girl who was not qualified or certified to perform all the duties of Jonetta's accommodated position.)

**Page 7** further guarantees the provision of reasonable accommodations for employees with documented disabilities and mandates a strict Standard of Professional Conduct across all corporate operations.

Defendant systematically breached every operational clause of Page 7 by removing Plaintiff from her established bagline accommodation, forcing her into an unpredictable and hostile environment, failing to enforce professional conduct against her harassers, and executing a discriminating and retaliatory termination based entirely on her medical status.

## COUNT II: FAILURE TO ACCOMMODATE AND DISABILITY DISCRIMINATION

**(Violations of the ADAAA, 42 U.S.C. § 12112, and the MHRA, RSMo § 213.055)**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

Defendant's sudden removal of Plaintiff from an established accommodation at the end of the bagline pulling freight, placing her to work next to a hostile co-worker who threw things and screamed at her while she tried to manage her Chronic PTSD, then LifeLines HR lady Adrea, proceeds to tell Jonetta that they were no longer going to accommodate her for her disability then fired her, constitutes a severe and actionable Adverse Employment Action under the **ADAAA** and the **MHRA**.

Under controlling **Eighth Circuit law**, an employer cannot hide behind internal metrics or the "honest belief" rule when its adverse actions are inextricably intertwined with an employee's disability and active accommodation needs (*Klimek v. CentraCare Health System*, 2026 (8th Cir.); *Huber v. Westar Foods, Inc.*, 2024 (8th Cir.)). Taking away an established role or treating it as a

performance metric violates the core mandates of the **ADA** (*Faidley v. United Parcel Serv., Inc.*, 889 F.3d 933 (8th Cir. 2018)).

Defendant committed independent, blatant violations of federal and state law by completely disregarding the Plaintiff's disability that was made very well known at the time of her hire with letters from social security/disability, psychiatrist letter and a neurologist report outlining the severe impact on her brain and the little regard of the instructions of the treating urologist regarding her Neurogenic Bladder condition, and by failing to engage in a good-faith interactive process.

Under established law, an employer has an absolute duty to accommodate a known restriction upon notification without requiring the employee to utter "magic legal words" (*Kowitz v. Trinity Health*, 542 F.3d 1240 (8th Cir. 2008)), and the sudden, unprovoked withdrawal of a long-standing, viable placement constitutes direct evidence of discriminatory animus (*Mershon v. St. Louis University*, 442 F.3d 1069 (8th Cir. 2006)). If an employee can no longer perform a task then the employer's failure to reassign them to an open, qualified position—such as her original accommodated bagline role like her psychiatrist told them to do in her **ADA** medical form—violates statutory law (*Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011 (8th Cir. 2000)).

**COUNT III: RETALIATORY DISCHARGE AND DISPARATE TREATMENT**

**(Violations of the Missouri Workers' Compensation Act, RSMo § 287.780)**

Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

Defendant systematically violated Missouri public policy and statutory law by targeting, isolating, economically penalizing, and ultimately discharging Plaintiff because she exercised her lawful rights under the Missouri Workers' Compensation Act following her June 2024 workplace hip injury.

Plaintiff's protected exercise of her workers' compensation rights was a direct, definitive contributing factor in Defendant's decision to discriminate against, target, and terminate her.

Under the binding precedent of the Supreme Court of Missouri, an employee satisfies their burden of proof if their workers' compensation claim was a contributing factor in the employer's decision to discriminate, target, or discharge

them (*Templemire v. W&M Welding, Inc.*, 433 S.W.3d 371 (Mo. banc 2014)). Missouri's public policy exception protects employees from retaliatory schemes designed to force them out through relaxed proof standards (*Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81 (Mo. banc 2010)). The scope of protected activities under **RSMo § 287.780** explicitly includes reporting an injury, seeking treatment, and navigating post-injury restrictions (*Crabtree v. Bugby*, 967 S.W.2d 66 (Mo. banc 1998)).

**COUNT IV: DISABILITY-BASED HOSTILE WORK ENVIRONMENT**

**(Violations of the ADAAA, 42 U.S.C. § 12112, and the MHRA, RSMo § 213.055)**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

The continuous physical and verbal intimidation perpetrated by co-worker Darrin Robinson, combined with the Team Lead's public defamation explicitly labeling Plaintiff an "addict" due to her medication for PTSD, created a severe uncomfortable and Hostile Work Environment that fundamentally altered the terms and conditions of Plaintiff's employment and affected her mentally and emotionally.

Defendant maintains direct corporate liability for this hostile environment because Plaintiff submitted two formal written grievances reporting the misconduct, and Defendant's management consciously chose to take zero corrective or disciplinary action against the harassers.

Under controlling law, a disability-based hostile work environment is established when harassment alters the terms of employment and management fails to act despite notice (*Palesch v. Missouri Dept. of Insurance*, 233 F.3d 1060 (8th Cir. 2000)). When an employee files explicit written complaints and management takes no corrective action, the employer is directly liable (*Diaz v. Tyson Fresh Meats, Inc.*, 643 F.3d 1149 (8th Cir. 2011)). Furthermore, slurs or defamatory accusations targeting an employee's legal, prescribed medical treatments for a recognized disability constitute direct evidence of discriminatory animus.

## COUNT V: RETALIATION AND PRETEXTUAL INVERSION

**(Violations of the ADAAA, 42 U.S.C. § 12203, and the MHRA, RSMo § 213.070)**

Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

Defendant's sudden administrative ambush, the deployment of corporate security guards to restrict Plaintiff's physical movements, the fabrication of "hostile environment" charges against Plaintiff, and her subsequent termination were entirely pretextual masks engineered to execute unlawful retaliation.

Defendant engaged in an actionable pattern of pretext by falsely accusing the complaining victim of committing the exact behavior she had previously reported, which serves as strong circumstantial evidence of unlawful retaliation under controlling Eighth Circuit framework (*Macias v. Southwest Cheese Co., LLC*, 624 Fed. Appx. 628 (8th Cir. 2015)).

An employee demonstrates corporate pretext by showing a flawless employment history immediately prior to engaging in a protected activity, such as filing a medical request or workers' comp claim (*Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011 (8th Cir. 2005)). The immediate temporal proximity between Plaintiff's formal medical requests and her sudden suspension completely destroys any legitimate, non-retaliatory justification asserted by Defendant (*Huber v. Westar Foods, Inc.*, 2024 (8th Cir.)).

---

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant LifeLine Foods, LLC, and award the following relief:

- **A. Economic Damages (Lost Wages and Benefits):** Compensatory damages for lost past wages, back pay, front pay, and lost employment benefits resulting from her unlawful termination and constructive demotion, in the amount of: **$** 102,400.00

- **B. Out-of-Pocket Expenses:** Reimbursement for out-of-pocket medical expenses, psychiatric treatment expenses, and alternative healthcare coverage costs directly tied to the severe workplace stress, totaling: **$** $17,000.00
- **C. Non-Economic Compensatory Damages (Emotional Distress and Mental Anguish):** Compensation for severe emotional distress, mental anguish, humiliation, acute anxiety, depression, loss of sleep, and loss of enjoyment of life caused by Defendant's persistent targeting, discriminatory actions, and hostile work environment, demanding: **$** 300,000.00
- **D. Punitive Damages:** Exemplary damages under the **ADAAA, MHRA, and RSMo § 287.780** in an amount sufficient to punish Defendant for its willful, malicious, and reckless indifference to Plaintiff's statutory civil rights, and to deter such conduct in the future, demanding: **$** 500,000.00
- **E. Reputational and Tortious Interference Damages:** Compensation for the total destruction of professional reputation and tangible economic loss caused by corporate agents making false, defamatory statements of fact regarding Plaintiff's professional conduct to third parties and prospective employers, demanding: **$** 100,000.00
- **F. Litigation Costs:** An award of reasonable attorneys' fees, expert witness fees, and all litigation costs incurred herein.
- **G. Interest:** Pre-judgment and post-judgment interest as allowed by law.
- **H. Other Relief:** Such other, further, alternative, and equitable relief as this Court deems just, proper, and necessary under the law.

*Plaintiff notes that the formal "Evidence In Support" of these claims will be submitted directly to the record.*

**I DEMAND A JURY TRIAL**

**Plaintiff hereby demands a trial by jury on all issues and counts so triable.**

Dated: September 16, 2026
Respectfully submitted,
/s/ Jonetta L. Grieme
**Jonetta L. Grieme**